**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| EVAN SLATTERY, on behalf of himself and all others similarly situated, | Cause No. 3:21-cv-00505 |
| PLAINTIFF, | |
| v. | **CLASS ACTION COMPLAINT** |
| UNIVERSITY OF NOTRE DAME DU LAC, | **JURY TRIAL DEMANDED** |
| DEFENDANT. | |

Plaintiff Evan Slattery ("Plaintiff"), by and through the undersigned counsel, brings this class action against Defendant University of Notre Dame du Lac ("Notre Dame," the "University," or "Defendant"), and alleges as follows based upon information and belief, except as to the allegations specifically pertaining to him, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action lawsuit on behalf of all persons who paid tuition and/or fees to attend University of Notre Dame for in-person and on-campus educational services and experiences for the semesters or terms affected by Coronavirus Disease 2019 ("COVID-19"), including the Spring 2020 semester, and were denied such services and experiences and had their course work moved to online only learning.

2.      Such individuals paid all or part of the tuition for the Spring 2020 semester that was around $27,523.00 for undergraduate students, and mandatory fees for each semester of approximately $253.50 including a $75.00 Health Center Access Fee, a $125.00 Technology Fee, a $6.00 Observer Fee and a $47.50 Student Activity Fee ("Mandatory Fees").

1

3. Notre Dame has not refunded any amount of the tuition or any of the Mandatory Fees, even though it implemented online only distance learning starting on or around March 11, 2020.

4. Because of the University's response to the COVID-19 pandemic, on or about March 11, 2020, the University also stopped providing any of the services or facilities the Mandatory Fees were intended to cover.

5. The University's failure to provide the services for which tuition and the Mandatory Fees were intended to cover since approximately March 11, 2020 is a breach of the contracts between the University and Plaintiff and the members of the Class and is unjust.

6. In short, Plaintiff and the members of the Class have paid for tuition for on-campus, in person educational services and experiences, with all the appurtenant benefits offered by a first-rate university, and were provided a materially different alternative, which constitutes a breach of the contracts entered into by Plaintiff with the University.

7. As to the Mandatory Fees, Plaintiff and the Class have paid fees for services and facilities which were simply not provided.

8. Plaintiff and the Class have been deprived of access to these facilities and services as a result of Defendant's response to the Coronavirus. This failure also constitutes a breach of the contracts entered into by Plaintiff with Defendant.

9. Rather than offer partial refunds, credits, or discounts to students like Plaintiff and the Class and balance the financial difficulties associated with Covid-19, Defendant has instead elected to place the financial burden entirely upon its students by charging then full tuition and fees when the services Notre Dame provided were not the full educational opportunities, experiences, and services that Plaintiff and the Class agreed to.

10.     Plaintiff does not challenge Defendant's compliance with the Covid-19 orders that were in place in Indiana or local authorities. Rather, Plaintiff challenges Defendant's decision to retain monies paid by students like Plaintiff and refuse to offer any refunds, provide any discounts, or apply any credit to Plaintiff and Class members' accounts when Defendant failed to provide the in-person and on-campus services.

11.     Plaintiff seeks, for himself and the Class members, the University's disgorgement and return of the pro-rated portion of its tuition and Mandatory Fees, proportionate to the amount of time in the respective semesters when the University closed and switched to online only learning.  The return of such amounts would compensate Plaintiff and the Class members for damages sustained by way of Defendant's breach.

12.     Plaintiff seeks for himself and the Class members protections including injunctive and declaratory relief protecting Class Members from paying the full cost of tuition and Mandatory Fees during the pendency of the pandemic in light of the educational services, opportunities, and experiences Defendant can actually safely provide.

13.     Plaintiff and members of the Class are entitled to a pro-rated refund of tuition and Mandatory Fees for the duration of Defendant's Covid-19 related closures for the in-person education and on-campus services and opportunities that Plaintiff and members of the Class have been denied.

## **PARTIES**

14.     Plaintiff Evan Slattery was an undergraduate student during the Spring 2020 semester and a current graduate student. For the Spring 2020 semester, Notre Dame charged Plaintiff approximately $27,523.00 in tuition and approximately $253.50 in Mandatory Fees, including a $75.00 Health Center Access Fee, a $125.00 Technology Fee, a $6.00 Observer Fee

and a $47.50 Student Activity Fee.

15.     Plaintiff Slattery is a resident of Louisiana.

16.     Plaintiff Slattery paid tuition and fees for in-person educational experiences, opportunities, and other related collegiate services. Plaintiff Slattery has not been provided a pro-rated refund of the tuition for his in-person classes that were discontinued and moved online, or the Mandatory Fee he paid after the University's facilities were closed and events were cancelled.

17.     Defendant Notre Dame is a private university in Notre Dame, Indiana that was founded in 1842. The University offers numerous major fields for undergraduate students, as well as a number of graduate programs. Defendant is incorporated in and registered as a non-profit corporation with the State of Indiana.

18.     Defendant's undergraduate and graduate programs includes students from many, if not all, of the states in the country.  Defendant has been recognized as one of the top universities in the United States.

## JURISDICTION AND VENUE

19.     This Court has original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which one or more of the other Class members are citizens of a State different from the Defendant.

20.     This Court has personal jurisdiction over Defendant because it resides in this District.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), because Defendant resides in this District and is a resident of the state in which the District is located.

4

### FACTUAL ALLEGATIONS.

22.     Plaintiff and Class Members paid the University for tuition and Mandatory Fees for the Spring 2020 semester.  The Spring 2020 semester started on Jan. 14, 2020 and ended on or around May 8, 2020.

23.     Tuition at the University was approximately $27,523.00 for undergraduate students, and Mandatory Fees for each semester were approximately $253.50 including a $75.00 Health Center Access Fee, a $125.00 Technology Fee, a $6.00 Observer Fee and a $47.50 Student Activity Fee. Similar charges were made to and paid by graduate students.

24.     Plaintiff and the members of the Class paid tuition for the benefit of on-campus and in-person educational services and experiences, including but not limited to access to campus and campus facilities, student services and activities, and live, interactive instruction throughout the semesters.

25.     The relationship between a student and university is contractual in nature, but the terms of the contract are rarely delineated and courts do not apply contract law rigidly in this context.

26.     Plaintiff and Notre Dame entered into a contractual agreement where Plaintiff would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services.

27.     The terms of the contractual agreement were set forth in the documents and materials provided to Plaintiff from Notre Dame, including, but not limited to, Notre Dame's website, marketing materials, the application for admission submitted by Plaintiff and Class Members, the acceptance letters received by Plaintiff and Class Members, the registration materials, the course catalog, course listings, the registration materials, the bills/invoices, the

student handbook, policy documents, and other materials that were provided to the Plaintiff and the Class, as well as Defendant's longstanding course of conduct.

28.     Prior to Plaintiff's enrollment, Notre Dame highlighted in marketing materials, advertisements, and other documents that in-person and on-campus educational opportunities, experiences, and services were invaluable to Plaintiff's educational experiences.

29.     Defendant offered these services to Plaintiff in exchange for payment of tuition and fees during various semesters during his enrollment, including the Spring 2020 semester.

30.     Plaintiff made payments to Defendant based on promises made by Notre Dame in those documents in lieu of receiving education at other universities or academic institutions – or enrolling in online only universities.

31.     In fact, Notre Dame offers only limited online programs through its college of business. These programs are significantly less expensive than its on-campus program.

32.     Defendant priced the cost of tuition based on the assumption of a full term of in-person learning.

33.     Upon information and belief, Defendant priced the Mandatory Fees based on the amount of services that students like Plaintiff would receive via in-person access.

34.     Throughout March 2020, the University made public announcements adjusting educational services and opportunities that affected Plaintiff.

35.     The University did not hold any in-person classes during the Spring 2020 semester after March 11, 2020 for undergraduate students, who were offered only classes in a remote online format with no in-person instruction or interaction.

36.     Most of the services for which the Mandatory Fees were assessed were also terminated or cancelled at or about this time, such as access to University's health and wellness

facilities, programs or services; fitness facilities; student events or sports; and an in-person commencement.

37.    The Mandatory Fees charged by Notre Dame include a Health Center Access Fee, a Technology Fee, an Observer Fee, and a Student Activity Fee, and other similar and related fees.

38.    Defendant has represented that these Mandatory Fees are associated with specific services that Defendant provides. For example, Defendant represents that:

    a.    Technology Fee – "is charged to undergraduate, graduate, law and MBA students' accounts each semester. It provides partial funding for the University's enterprise-wide technology infrastructure, which provides all students access to the Internet, e-mail, courseware, campus clusters, and a wide array of the latest software. It also provides for the growth in student services, such as course and degree requirements, web registration, and value-added Internet-related capabilities."[1]

    b.    Health Center Access Fee - "is a per semester fee charged to undergraduate, graduate, law and MBA students' accounts each semester. It provides students access to all services at University Health Services and University Counseling Center, including 24-hour medical assistance and counseling/mental health assistance, alcohol and drug education programs, as well as health education and wellness programs. It also provides partial funding to address increasing student health and wellness needs, along with funding to maintain health facilities."[2]

    c.    Student Activity Fee – "is a per semester fee charged to undergraduate students to support student body-sponsored events held on campus and student government

---

[1] https://studentaccounts.nd.edu/rates/fee-descriptions/
[2] *Id.*

activities."[3]

    d.  Observer Fee – "is a per semester fee charged to undergraduate students for the daily student newspaper."[4]#

39.    Members of the Class have demanded the return of the prorated portion of tuition, and have taken to an online petition to demand the same.[5] As one student put it, "[s]tudents learn in many different ways and a lack of physical instruction, professional critique, and face to face advising from faculty will create significant challenges for many learners." while another stated, "[t]his level of education isn't what I was promised as a Notre Dame student."[6]

40.    Despite the demand, Notre Dame has not provided reimbursement or refund information regarding tuition or the Mandatory Fees.

41.    Students attending Notre Dame's Spring 2020 semester did not choose to attend an online only institution of higher learning, but instead chose to enroll in the University's campus-based, in-person educational services – with the understanding that Notre Dame would provide access to campus, access to the community, and on-campus/in-person educational opportunities, services, and experiences.

42.    On its website, Notre Dame markets the University's on-campus experience and opportunities as a benefit to students. "Notre Dame stands on 1,250 acres considered by many to be among the most beautiful possessed by any university in the nation. From the collegiate Gothic architecture and park-like landscape to exquisite outdoor sculpture and breathtaking views, Notre Dame's campus is a visual splendor. Even its more recently constructed buildings that house state-of-the-art academic and student life facilities fit within a cohesive visual aesthetic that preserves

---

[3] *Id.*
[4] *Id.*
[5] https://www.change.org/p/the-university-of-notre-dame-university-tuition-reduction-due-to-covid-19
[6] *Id.*

tradition amid progress."[7]

43.     The University uses its website, promotional materials, circulars, admission papers, and publications to tout the benefit of being on campus and the education students will receive in its facilities. "All undergraduate students begin in one of our 33 on-campus residence halls to support their formation as they pursue their studies, develop healthy relationships, become servant leaders, and reflectively and prayerfully discern their futures. While each of the halls is a world unto itself, collectively they combine to create a unified campus community that is unlike any other in American higher education. This community is rich in tradition; Notre Dame is alive with events that are woven into the fabric of campus life and enliven the student experience each year."[8]

44.     Defendant marketed and conveyed the campus and in-person experiences through sample materials like this:

---

[7] https://www.nd.edu/campus-life/
[8] Id.



February 12, 2018; Duncan Student Center (Photo by Barbara Johnston/University of Notre Dame)



September 30, 2017; Student section of Notre Dame Stadium (Photo by Matt Cashore/University of Notre Dame)



February 22, 2018; Claire DiOrio climbs the climbing wall in Duncan Student Center. (Photo by Matt Cashore/University ...



February 8, 2020; Members of the Frank Montana Sketching Club work in the Snite Museum of Art. (Photo by Matt Cas...



November 30, 2017; Students work in a Dunne Hall study room. (Photo by Matt Cashore/University of Notre Dame)

45.     In the University's standardized acceptance letter, it conveys a picture of the gates to campus and welcomes students, along with indications on how the students can formally accept that offer of enrollment.

46.     In fact, the University requires "All undergraduate students begin in one of our 33 on-campus residence halls to support their formation as they pursue their studies, develop healthy relationships, become servant leaders, and reflectively and prayerfully discern their futures. While each of the halls is a world unto itself, collectively they combine to create a unified campus community that is unlike any other in American higher education. This community is rich in tradition; Notre Dame is alive with events that are woven into the fabric of campus life and enliven the student experience each year."

47.     Other documents and materials provided reference and representations of the nature of campus-based educational services that the University would provide – throughout enrollment,

acceptance, registration, and payment processes.

48.     Many of those documents are not available to the Named Plaintiff in the filing of this action, as they are solely possessed and maintained by the University.

49.     However, that is not what students, including Plaintiff, received during the semesters affected by Covid-19.

50.     According to a public release on March 11, 2020, Defendant announced "Beginning Monday, March 23 and continuing through at least April 13, all in-person classes will be suspended, to be replaced with virtual instruction and other alternative learning options. Furthermore, there will be no classes in any format the week of March 15 to allow faculty time to make the adjustment to on-line instruction."[9] In the same release Defendant urged students to stay home or return home instead of returning to campus.[10] In a follow up release on March 18, 2020 Defendant announced that all classes will remain online for the remainder of the semester.[11]

51.     After Notre Dame converted to online only learning, the educational experiences and services offered to Notre Dame students was materially different in practically every aspect as compared to what was promised and what the educational experiences afforded to Plaintiff and the Class once was.

52.     During the online portion of the Spring 2020 semester, Notre Dame used programs by which previously recorded lectures were posted online for students to view on their own or by virtual Zoom meetings. Therefore, there was a lack of access to campus, including hands-on, in-person, or on-campus classroom interaction among teachers and students, and among students that is instrumental in educational development and instruction.

---

[9] https://here.nd.edu/news/father-jenkins-in-person-classes-suspended-moved-online/
[10] *Id.*
[11] https://here.nd.edu/news/fr-jenkins-in-person-classes-suspended-for-remainder-of-semester-2/

53.     Plaintiff and the Class have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

54.     Plaintiff and the Class were denied access to facilities such as libraries, laboratories, computer labs, recitations, and study rooms, are integral to a college education.

55.     These same facilities were promoted by the University as integral to the on-campus educational services it was providing.

56.     Plaintiff and the Class were denied access to activities offered by campus life, which foster intellectual and academic development and independence, and networking for future careers.

57.     Notre Dame priced the tuition and Mandatory Fees based on the on-campus and in-person educational services, opportunities and experiences it was providing on campus.

58.     Notre Dame has not made any refund of any portion of the tuition Plaintiff and the Class paid for during the semesters affected by Covid-19, and have offered no discount, rebates, or refunds going forward.

59.     Notre Dame did not refund any portion of the Mandatory Fees it collected from Plaintiff and the members of the Class for the affected semester even though it closed or ceased operating the services and facilities for which the Mandatory Fees were intended to pay. For example, Plaintiff and the Class were denied access to the Health Center and student activities, both of which are funded by the Mandatory Fees.

60.     Plaintiff and the Class members are therefore entitled to a pro-rated refund of the tuition and Mandatory Fees they paid for the Spring 2020 semester for the remaining days of that semester after classes moved from in-person to online and facilities were closed, and for any other periods when in-person classes were cancelled and moved online.

61.     Defendant's practice of failing to provide reimbursements for tuition and Mandatory Fees despite the diminished value of the education and other experiences that it provided, and the reduced benefits associated with the fees, as alleged herein, violates generally accepted principles of business conduct.

## CLASS ACTION ALLEGATIONS

62.     Plaintiff brings this case individually and, pursuant to F.R.C.P. 23, on behalf of a proposed class defined as:

> All persons who paid, or will pay, tuition and/or the Mandatory Fees for a student to attend in-person class(es) at the University of Notre Dame during the Spring 2020 semester or during any other semester affected by Covid-19 during which the student had or has their class(es) moved to online learning (the "Class").

63.     Plaintiff reserves the right to modify or amend the definition of the proposed Class if necessary before this Court determines whether certification is appropriate.

64.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of F.R.C.P. 23(a) and (b).

65.     The Class is so numerous that joinder of all members is impracticable.  Although the precise number of Class members is unknown to Plaintiff, the University has reported that an aggregate of 12,681 or more undergraduate and graduate students were enrolled for the 2019-2020 school year. The names and addresses of all such students are known to the University and can be identified through the University's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

66.     The questions here are ones of common or general interest such that there is a well-defined community of interest among the Class members.  These questions predominate over

questions that may affect only individual members of the Class because Notre Dame has acted on grounds generally applicable to the Class.  Such common legal or factual questions include, but are not limited to:

    a.  Whether the University accepted money from Plaintiff and the Class members in exchange for the promise to provide an in-person and on-campus live education, as well as certain facilities and services, throughout the semesters affected by Covid-19;

    b.  Whether Defendant breached its contracts with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus live education after March 11, 2020;

    c.  Whether Defendant breached its contracts with Plaintiff and the Class by failing to provide the services and facilities to which the Mandatory Fees pertained after mid-March 2020;

    d.  Whether Defendant is unjustly enriched by retaining all of the tuition and Mandatory Fees during the terms when the University has been closed, and Plaintiff and the members of the Class have been denied an in-person and on-campus live education and access and the services and facilities for which the Mandatory Fees were paid; and

    e.  The amount of damages and other relief to be awarded to Plaintiff and the Class members.

67.  Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other Class members each contracted with Defendant for it to provide an in-person and on-campus live education for the tuition they paid and the services and facilities for the Mandatory Fee that they paid, that the University stopped providing in March.

68.  Plaintiff is a more than adequate class representative.  In particular:

    a)  Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class action litigation;

    b)  His interests do not conflict with the interests of the other Class members who he seeks to represent;

    c)  No difficulty anticipated in the management of this litigation as a class action; and

d)  Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

69.     Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

70.     It is impracticable to bring members of the Classes individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.  The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.  A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The damages or financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against the University.  It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

71.     Plaintiff also seeks class certification for injunctive and declaratory relief under

F.R.C.P. 23(b)(1) and (b)(2), at the appropriate juncture.

### FIRST CLAIM FOR RELIEF
**BREACH OF CONTRACT**
**(On Behalf of Plaintiff and the Class)**

72.     Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

73.     Plaintiff brings this claim individually and on behalf of the members of the Class.

74.     Plaintiff and Class members entered into identical, binding contracts with Defendant by accepting Defendant's offer to register for on-campus classes in accordance with the terms of the Catalogs, Defendant's publications, and Defendant's usual and customary practice of providing on-campus courses.

75.     The language on Notre Dame's website, Catalogs, and in other materials made available to students promising in-person instruction, campus facilities, services, and resources became terms of the contract. That is, at the time of contract, the parties had the reasonable expectation that, in exchange for tuition and fee payments, Defendant would provide Plaintiff and Class members with an on-campus education. The nature of the instruction provided by Notre Dame at the time Plaintiff and Class members enrolled (i.e., in-person classroom instruction) as well as the facilities and resources offered by Notre Dame were and are material terms of the bargain and contractual relationship between students and Defendant.

76.     Under their contracts with Defendant, and per Defendant's usual and customary practice of providing on-campus courses, Plaintiff and Class members registered for on-campus courses and paid Defendant's tuition and/or fees for Defendant to provide in-person instruction and access to Defendant's facilities.

77.     Plaintiff and Class members accepted and intended to use and enjoy Defendant's

on-campus classes and facilities.

78.     Plaintiff and Class members have fulfilled all requirements of their mutually agreed contracts, having followed the Catalogs' policies, procedures, and requirements for registering and paying for on-campus courses and access to on-campus facilities and services. Plaintiff and Class members have paid Defendant for all financial assessments starting in the Spring 2020 semester.

79.     By ceasing in-person instruction, relegating Plaintiff and Class members exclusively to remote instruction, and shutting down campus facilities and opportunities to Plaintiff and the Class, Defendant failed to provide the services for which Plaintiff and Class members bargained for when they entered into their contractual relationship with Defendant.

80.     Defendant's failure to provide in-person instruction and shutdown of campus facilities amounts to a material breach of the contract.

81.     The tuition, fees, and other costs that Plaintiff and the Class paid were intended to cover in-person educational and extracurricular services. Defendant, however, have failed and continues to fail to provide the education and services due under the contracts, yet have improperly retained the funds Plaintiff and the other Class members paid or agreed to pay.

82.     Plaintiff and members of the Class have suffered damages as a direct and proximate result of Defendant's breach, including being deprived of the education, experience, and services that they were promised and reasonably expected to obtain, and for which they have paid.

83.     Plaintiff and Class members are entitled to an award of money damages or partial restitution in an amount to be determined at trial as redress for Notre Dame's breach, including but not limited to prorated reimbursement of the tuition, fees, and other expenses for services that Defendant failed to deliver fully.

84.     Defendant's performance under the contracts is not excused because of COVID-

19. Even if performance were excused or impossible, Defendant would nevertheless be required to return the funds received for services and/or goods that it did not provide.

**SECOND CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

85. Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

86. Plaintiff brings this claim individually and on behalf of the members of the Class.

87. In the alternative, to the extent that Defendant contends that there is not a contract between the parties with respect to access to campus and on-campus educational services and experiences, Plaintiff brings this claim for unjust enrichment individually and on behalf of the members of the Class.

88. By assessing and accepting the tuition and the fees for the Spring semester, the University agreed to, among other things, provide an in-person and on-campus educational services as well as access to facilities to which such monies were intended to cover.

89. Defendant has retained the benefits of the amount of tuition and fees that Plaintiff and Class members have provided – without providing the benefits that Plaintiff and Class members were owed.

90. For example, during the Spring 2020 semester Defendant failed to provide Plaintiff and Class Members access to any on-campus facility after March 11, 2020. Yet Defendant assessed Plaintiff with tuition and fees that covered the cost of upkeep and maintenance of such facilities, services, costs, and expenses.

91. Plaintiff was not able to access such facilities or services remotely.

92. Plaintiff paid tuition and fees with the expressed understanding that such costs

included the in-person classes, services, opportunities, and experiences that Notre Dame has previously marketed, promoted, or made available prior to Covid-19.

93.     The costs incurred for having an online only program are significantly lower than the overhead needed to provide classes and services on campus.

94.     Defendant has been unjustly enriched by Plaintiff's payment of tuition and fees.

95.     Despite not being able to provide such services, Notre Dame failed to provide reimbursements for tuition and fees despite the diminished value of the education and other experiences that it provided and the reduced benefits associated with the fees.

96.     Plaintiff and members of the Class are entitled to the disgorgement and restitution of the amounts by which the University has been unjustly enriched.

**THIRD CAUSE OF ACTION**
**CONVERSION**
**(On Behalf of Plaintiff and the Class)**

97.     Plaintiff repeats and re-alleges the factual allegations above, as if fully set forth herein.

98.     Plaintiff brings this claim individually and on behalf of the members of the Class.

99.     Plaintiff and the Class have made financial arrangements that required them to make payments before Defendant provided services.

100.    Defendant accepted Plaintiff's monies with the express understanding that the Defendant would provide in-person and on-campus educational experiences, opportunities, and services.

101.    Defendant was unable to perform such services or provide such experiences and opportunities.

102.    Defendant has converted Plaintiff's and the Class' property – namely their tuition

and fees - into their own property[12] without just compensation.

103.   Defendant has converted Plaintiff's tuition and fees into its own monies without providing the in-person and on-campus services that Plaintiff and the Class gave their money for.

104.   Defendant's failure to return the tuition and fees paid by its students is a separate and distinct harm from its failure to provide the promised and agreed-upon in-person learning and on-campus services. It is inequitable for Defendant to convert such funds into its own profits despite the failure to provide such services, experiences, and opportunities.

105.   Plaintiff and members of the Class are entitled to common law and statutory damages as a result of the Defendant's conversion of their property.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of Plaintiff and the Class against Defendant as follows:

(a)   For an order certifying the Class under F.R.C.P. 23 and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b)   For a judgment in favor of Plaintiff and the Class on all counts asserted

---

[12] Indeed, colleges and universities must be able to separately account for student payments, as well as financial aid received on an individual student's behalf, as these institutions are frequently required to issue refunds to the government and the student for instances where the student enrolls, but does not complete classes for which the institution has received financial aid payments from the federal government. The Higher Education Act ("HEA"), Title IV, governs federally funded student financial aid programs for college and post-secondary vocational training. *See* 20 U.S.C. §§ 1070–1099 (1990 & 1992 Supp.). The HEA requires that when a student withdraws partway through the enrollment period, the institution must refund a certain portion of the charges to account for its reduced educational obligations toward the student. *Career Coll. Ass'n v. Riley*, 74 F.3d 1265, 1269 (D.C. Cir. 1996). Thus, it is beyond dispute that any college or university receiving any tuition payments through government-provided financial aid must be able to account for what was paid for each individual student. This means that each student's tuition funds must be capable of being separately identified and sequestered, and a claim for conversion of those funds can be properly sustained. Moreover, discovery will flesh out more information about the particular accounting practices employed by Defendant.

herein;

(c)     For compensatory damages in an amount to be determined by the trier of fact;

(d)     For an order compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

(e)     For an award of restitution and all other forms of equitable monetary relief;

(f)     For an order awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

(g)     For an order awarding pre- and post-judgment interest on any amounts awarded; and,

(h)     For an order awarding such other and further relief as may be just and proper, including injunctive relief and declaratory relief.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: July 15, 2021                           Respectfully submitted,

/s/ *Scott D. Gilchrist*
Scott D. Gilchrist
Atty. No. 16720-53
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
P: 317-636-6481
F: 317-636-2593
sgilchrist@cohen&malad.com

Jeffrey K. Brown, Esq. *(To apply Pro Hac Vice)*
Michael A. Tompkins, Esq. *(To apply Pro Hac Vice)*
Brett R. Cohen, Esq. *(To apply Pro Hac Vice)*
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com
bcohen@leedsbrownlaw.com

Jason P. Sultzer, Esq. *(To apply Pro Hac Vice)*
Benjamin Zakarian, Esq. *(To apply Pro Hac Vice)*
Mindy Dolgoff, Esq. *(To apply Pro Hac Vice)*
**THE SULTZER LAW GROUP, P.C.**
270 Madison Avenue, Suite 1800
New York, NY 10016
Telephone: (212) 969-7810
sultzerj@thesultzerlawgroup.com
zakarianb@thesultzerlawgroup.com

*Counsel for Plaintiff and Proposed Class*