UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| EVAN SLATTERY, on behalf of himself and all others similarly situated,<br><br>          *Plaintiff*<br><br>v.<br><br>UNIVERSITY OF NOTRE DAME DU LAC,<br><br>          *Defendant* | Cause No. 3:21-cv-505-RLM-SLC |

ORDER

Currently pending before the court is the defendant Notre Dame's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and its related motion to strike the class allegations contained in counts I and II of the complaint. For the following reasons, the court sua sponte stays this case while parallel litigation is resolved in the Indiana state courts.

I. Background

Mr. Slattery brings claims against Notre Dame for breach of contract, unjust enrichment, and conversion related to the second half of the Spring 2020 semester when Notre Dame shifted to online classes in response to COVID-19. Mr. Slattery says that he contracted with Notre Dame for in-person and on-campus educational services in exchange for tuition, and that Notre Dame

breached that contract when it cancelled in-person services. He says he paid for these services, but they weren't provided.

Indiana caselaw on student-university contractual disputes over services paid for but not provided is scant. The parties therefore have borrowed and applied the overarching legal framework that Indiana courts apply to student-university contractual disputes involving an educational judgment (e.g., whether a student should be dismissed from an academic program, or what curriculum is best to prepare students for their future professions). That framework provides that the basic legal relation "between a student and an educational institution is contractual in nature[,]" but the terms of the contract "are rarely delineated, nor do the courts apply contract law rigidly." Amaya v. Brater, 981 N.E.2d 1235, 1240 (Ind. Ct. App. 2013). The framework also includes a bad faith standard—when suing a university for breach of contract, a student must allege that the university acted illegally, arbitrarily, capriciously, or in bad faith. *E.g.*, id.

Notre Dame argues that Mr. Slattery's breach of contract claim should be dismissed because it lacks a bad faith allegation. Mr. Slattery says he doesn't need to make this allegation—a bad faith standard shouldn't apply because his case doesn't involve an educational judgment. Whether this standard applies to cases like Mr. Slattery's is an issue of first impression in Indiana. If a bad faith standard does apply, it's unlikely that Mr. Slattery would be able to make that allegation because Notre Dame was subject to Governor Eric Holcomb's stay-at-home executive order that effectively made in-person classes and activities illegal. Exec. Order 20-08.

2

Another major point of contention in Notre Dame's motion to dismiss is whether in-person services were a term of the contract between Mr. Slattery and Notre Dame.

Notre Dame cites educational judgment cases, saying that the contract between a student and a university is implied. Amaya v. Brater, 981 N.E.2d at 1240. Contract interpretation is a question of law in Indiana, unless the contract is ambiguous, then it's a question of fact. Oxford Financial Group, Ltd. v. Evans, 795 N.E.2d 1135, 1143 (Ind. Ct. App. 2003). Both parties contend "that the catalogues, bulletins, circulars, and regulations of a university made available to the matriculant" inform the terms of the contract. Id.

Notre Dame says that, to state a breach of contract claim, a plaintiff must identify the term of the contract that the defendant failed to honor, but Mr. Slattery hasn't done so because a guarantee of in-person services wasn't a term of the implied contract. Mr. Slattery says that it was. Courts across the nation are divided on whether in-person services are a term of the implied contract between a student and a university, and Indiana caselaw doesn't provide any guidance.

Three Indiana trial courts have decided motions to dismiss in student-university breach of contract cases dealing with issues identical to the ones presented here. One court simply denied the defendant's motion without explaining why. Mellowitz v. Ball State University, 2020 WL 5524659 (Ind. Super. Aug. 14, 2020). The two other courts in Seslar v. The Trs. of Purdue Univ., 2021 WL 1235493 (Ind. Super. Mar. 08, 2021), and Spiegel v. The Trs. of Ind. Univ.,

3

2020 WL 7135320 (Ind. Cir. Nov. 19, 2020), also denied the defendants' motions, but with more analysis. They applied the overarching legal framework from educational judgment cases, but they didn't apply a bad faith standard and didn't explain why. They also found that in-person services were terms of the respective contracts between the students and the universities. The Indiana Court of Appeals granted the universities' motion for interlocutory appeal from those orders; the cases were consolidated on appeal and are pending. The Independent Colleges of Indiana were allowed to appear as amicus curiae and filed a brief in support of the universities' position. Briefing was complete on November 30, 2021, and a motion for oral argument is pending. The universities assert the same arguments as Notre Dame asserts here. Three of the attorneys for the appellants are also counsel for Notre Dame. Two attorneys for the appellees are from the same law firm as one of the attorneys for Mr. Slattery.

## II. Discussion

The parties don't discuss abstention, but several federal courts in this circuit have raised the issue sua sponte. Hadzi-Tanovic v. Johnson, 2021 WL 5505541, at *3 (N.D. Ill. Nov. 24, 2021); Escarza v. Bank of New York Mellon as Tr. for CWHEQ Inc., Home Equity Loan Asset Backed Certificates, 2020 WL 6044298, at *1 (N.D. Ill. Oct. 13, 2020); Kamtel, Inc. v. Bore Tech Constr., LLC, 2017 WL 532337, at *6 (W.D. Wis. Feb. 9, 2017); Ayers v. Ayers, 2013 WL 1290526, at *4 (C.D. Ill. Mar. 28, 2013) ("[W]hether a court may abstain on its own accord under Colorado River appears to be a matter of first impression in

4

this Circuit," but the Court of Appeals for the Seventh Circuit has allowed it with similar abstention doctrines.); *see also* Driftless Area Land Conservancy v. Valcq, 16 F.4th 508, 525 (7th Cir. 2021), *reh'g denied* (Nov. 16, 2021); Jimenez v. Rodriguez-Pagan, 597 F.3d 18, 27 n. 4 (1st Cir. 2010); Michelson v. Citicorp National Services, Inc., 138 F.3d 508, 510 (3d Cir. 1998) (affirming district court sua sponte stay under Colorado River pending resolution of related state court action); Nationstar Mortgage LLC v. Knox, 351 Fed. Appx. 844, 851 (5th Cir. 2009).

"Under the Colorado River abstention doctrine, a federal court may stay a suit in exceptional circumstances when there is a concurrent state proceeding and the stay would promote 'wise judicial administration.'" Clark v. Lacy, 376 F.3d 682, 685 (7th Cir. 2004) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 818 (1976)). "[T]he mere fact that an action is pending in state court ordinarily is no bar to parallel federal proceedings[,]" and abstention is "warranted only under limited and exceptional circumstances." LaDuke v. Burlington N. R. Co., 879 F.2d 1556, 1558 (7th Cir. 1989). "Only the clearest of justifications will allow a federal court to surrender jurisdiction because of parallel state-court litigation." Id. Ultimately, the decision to abstain under Colorado River is left up to the discretion of the court. Medema v. Medema Builders, Inc., 854 F.2d 210, 212 (7th Cir. 1988).

A court must conduct a two-part analysis to determine whether a stay is appropriate. Clark v. Lacy, 376 F.3d at 685. "First, the court must consider whether the concurrent state and federal actions are actually parallel." Id. "If so,

the second question is whether the necessary exceptional circumstances exist to support a stay . . . ." DePuy Synthes Sales, Inc. v. OrthoLA, Inc., 953 F.3d 469, 477 (7th Cir. 2020). A variety of factors inform this inquiry, including:

1. Whether the case concerns rights in property, and if so, whether the state has assumed jurisdiction over that property;

2. The inconvenience of the federal forum;

3. The desirability of consolidating litigation in one place (put otherwise, the value in avoiding "piecemeal" or broken-up proceedings);

4. The order in which jurisdiction was obtained in the concurrent fora;

5. The source of governing law—federal or state;

6. The adequacy of the state-court action to protect the federal plaintiff's rights;

7. The relative progress of the state and federal proceedings;

8. The presence or absence of concurrent jurisdiction;

9. The availability of removal; and

10. Whether the federal action is vexatious or contrived.

DePuy Synthes Sales, Inc. v. OrthoLA, Inc., 953 F.3d at 477. "Not all of these considerations will be pertinent to every case, nor does this list preclude the district court from taking into account a special characteristic of the case before it." Id.

This case and the consolidated cases before the Indiana Court of Appeals are actually parallel. "To meet the 'parallel' requirement, suits need not be identical. Two suits are considered 'parallel' when substantially the same parties

are contemporaneously litigating substantially the same issues in another forum." Clark v. Lacy, 376 F.3d at 686 (internal citations omitted). Formal symmetry between the two cases isn't necessary. Id. (citing Lumen Constr., Inc. v. Brant Constr. Co., 780 F.2d 691, 695 (7th Cir. 1985)). Instead, courts determine whether there is a "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." Id.

There isn't any literal overlap of parties between the cases, but that isn't determinative because "[p]arties with 'nearly identical' interests are considered 'substantially the same' for Colorado River purposes." Id. (citing Caminiti & Iatarola v. Behnke Warehousing, Inc., 962 F.2d 698, 700–701 (7th Cir.1992); *see also* Schneider Nat'l Carriers, Inc. v. Carr, 903 F.2d 1154, 1156 (7th Cir. 1990) (finding parallel cases where state action contained additional defendants). Courts "focus on the parties' litigation interests" and "the overall similarity of the disputes." Id.; *see also* Indiana Ins. Co. v. Vlaicevic, 1992 WL 191125, at *4 n.2 (N.D. Ill. Aug. 5, 1992) ("While this court recognizes that the parties to the state and federal suits are somewhat different, this fact will not destroy the parallel nature of the suits since complete symmetry is not required."). Plaintiffs in all the cases are college students suing Indiana universities under Indiana law, bringing identical claims for breach of contract and unjust enrichment, and making identical arguments to support those claims. All the cases arise out of the same factual circumstances concerning COVID-19 and present the same legal issues. They are similar for *Colorado River* purposes because resolution of

7

the state cases will dispose of all claims presented in this case.[1] It will also dispose of Notre Dame's motion to strike the class allegations contained in counts I and II of the complaint because the universities in the state cases make that same motion and present the same arguments to the Indiana Court of Appeals as Notre Dame presents here.

Turning to the second step of the *Colorado River* analysis, there are exceptional circumstances to justify abstention. With respect to factor 3, "the danger of piecemeal litigation does not turn on formal identity of issues but on concerns about the efficient use of judicial resources and the public's perception of the legitimacy of judicial authority." Tyrer v. City of S. Beloit, Ill., 456 F.3d 744, 752 (7th Cir. 2006). Because the state cases are functionally identical to this case, resolving this case's issues while the state cases are on appeal "creates a high risk of inconsistent results and wasteful duplication" if this court decides state law issues of first impression differently than the Indiana Court of Appeals will. DePuy Synthes Sales, Inc. v. OrthoLA, Inc., 953 F.3d at 478; *accord* Interstate Material Corp. v. City of Chicago, 847 F.2d 1285, 1290 (7th Cir. 1988) ("[I]nconsistent rulings could jeopardize the appearance and actuality of justice . . . jeopardizing judicial economy [and] the legitimacy of the court system and possibly resulting in conflicting adjudications."). Moreover, the parties might

---

[1] The Indiana Court of Appeals appellees didn't bring claims for conversion like Mr. Slattery does here, but that doesn't matter because an additional claim in one case doesn't destroy parallelism. *See* Clark v. Lacy, 376 F.3d at 686-687. Moreover, Mr. Slattery didn't respond to Notre Dame's arguments related to the conversion claim, and Notre Dame cites caselaw saying that a lack of response constitutes waiver. So it may be that resolution of the state cases will resolve all the claims in dispute in this case. Id.

incur costs related to conducting discovery, briefing a motion for reconsideration, or filing an appeal that could have otherwise been avoided. Factor 3 supports abstention.

Factors 4 and 7 also support abstention: the state court cases were filed first and are further along than this case. *E.g.*, Lumen Constr., Inc. v. Brant Constr. Co., 780 F.2d at 693-694 (affirming abstention, partially because the state court proceeding was filed first and advanced further). The common issues amongst the cases are well on their way to resolution by a court with the power to say what Indiana law is; this case is still relatively young in comparison. *See* id. at 696. There is more to gain by waiting for that resolution than by forging ahead with the risk of conducting unnecessary or irrelevant litigation.

Finally, factor 5 most compellingly supports abstention. "The animating force of the [Supreme] Court's abstention cases is that 'they all implicate (in one way or another and to different degrees) underlying principles of equity, comity, and federalism foundational to our federal constitutional structure.'" Driftless Area Land Conservancy v. Valcq, 16 F.4th at 525-526 (quoting J.B. v. Woodard, 997 F.3d 714, 722 (7th Cir. 2021). The issues amongst the cases here are ones of first impression under Indiana law. "[A] state court's expertise in applying its own law favors a Colorado River stay." Clark v. Lacy, 376 F.3d at 688 (citing Day, et al. v. Union Mines, Inc., 862 F.2d 652, 660 (7th Cir. 1988)). Federal courts regularly stay cases and allow state courts to resolve issues of state law common amongst parallel cases. *E.g.*, id.; Lumen Constr., Inc. v. Brant Constr. Co., 780

9

F.2d at 697; Rosser v. Chrysler Corp., 864 F.2d 1299, 1308-1309 (7th Cir. 1988). The court elects to do the same here.

### III. CONCLUSION

The court sua sponte STAYS this case awaiting decision from the Indiana Court of Appeals in The Trs. of Ind. Univ., et al. v. Spiegel, et al., 21A-CT-00175 (Ind. Ct. App. Jan. 29, 2021). The court DIRECTS the clerk of court to close this case administratively and remove it from the active docket. Either party may reopen the case within 60 days after the proceedings in state court are completed, including any transfers to the Indiana Supreme Court that might be granted.

SO ORDERED.

ENTERED: February 14, 2022

/s/ Robert L. Miller, Jr.
Judge, United States District Court